# 22-3104-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

AMAR SCOTT, AKA "A", JOHN SIMMONS, JERRICK DENSON, AKA "D",
ISAIAH WOODS, AKA "Izzy", LAMAR SIMMONS, AKA "Lil Daddy",
YULANDER GREEN, AKA "L", AKA "Lander", JAVONNE JACKSON, AKA
"Von", AKA "Dutch", DEREK TAYLOR, AKA "Swiff", MICHAEL WALKER,
AKA "Awol", JEFFREY DENSON, AKA "Jeff", AKA "Blue", MARCUS
JOHNSON, AKA "Miggs", MARVIN SIMMONS, AKA "Jr", AKA "Junior",
CAMERON CHARLES, AKA "Cam", TRAVIS HOUNSHELL, AKA "Trav",

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MATTHEW W. BRISSENDEN
MATTHEW W. BRISSENDEN, P.C.
*Attorney for Defendant-Appellant*
666 Old Country Road, Suite 501
Garden City, New York 11530
(516) 683-8500

CP COUNSEL PRESS    (800) 4-APPEAL • (326427)

MICHAEL NESMITH, JEREMIAH NETTLES, JOSEPH LOVING, HARRY NESMITH, LYNNARD DAVIS, LYNNARD DAVIS, JANICE SNIPES, JAY JAYQUAN WYNNE, AKA Jayquan Gerod Wynne, AKA "Tipsy", TEVON HAYMON, BRANDON WHEELER, AKA "Weed", RUSSELL HAMPTON, AKA "TJ", MICHAEL JACKSON, AKA "Boosum", AKA "Boots",

*Defendants,*

DEARICK SMITH, AKA "Ace", AKA "Lil D",

*Defendant-Appellant.*

**TABLE OF CONTENTS**

ARGUMENT......................................................................................... 1

I.      **The Lower Court Erred by Using Relevant Conduct
to Increase the Appellant's Criminal History
Category at Resentencing**.......................................................... 1

         A.     **As the Appellant Argued in His Principal Brief,
The Lower Court's Adherence to Application Note 4
Prejudiced the Defendant, By Increasing His
Criminal History from Category I to Category III**............ 3

         B.     **The Appellant Was Prejudiced by the Increase
In His Criminal History Category, Regardless of
Whether His Offense Level Was Properly Calculated**......... 6

         C.     **The Government Fails to Acknowledge the
Impact of *Kisor v. Wilkie***.............................................8

II.     **The Lower Court Erred in Declining to Downwardly
Depart To Account For Time Served Under
U.S.S.G. § 5G1.3**.................................................................... 13

III.    **Unwarranted Disparity**........................................................15

CONCLUSION....................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Brown v. City of N.Y.*, 862 F.3d 182 (2d Cir. 2017)......................................................9

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)...........................................2, 8, 9, 10, 11, 12

*Ratzlaf v. United States*, 114 S. Ct. 655 (1994)...........................................................16

*Stinson v. United States*, 508 U.S. 36 (1993)........................................................10, 14

*United States v. Bala*, 236 F.3d 87 (2d Cir. 2000).......................................................14

*United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006).............................................16

*United States v. Hampton*, No. 20-2986,
2021 U.S. App. LEXIS 36992 (2d Cir. Dec. 15, 2021)..................................................9

*United States v. Hopper*, No. 19-3087-cr (L),
2022 U.S. App. LEXIS 12945 (2d Cir. May 13, 2022)..................................................7

*United States v. Lanese,* 937 F.2d 54 (2d Cir. 1991)...................................................15

*United States v. Marrone*, 48 F.3d 735 (3d Cir. 1995)................................10, 11, 12

*United States v. Minicone*, 960 F.2d 1099 (2d Cir. 1992)...........................................10

*United States v. Minicone,* 994 F.2d 86 (2d Cir. 1993)...............................................15

*United States v. Mizell*, 671 F. App'x 826 (2d Cir. 2016)...........................................10

*United States v. Naidoo*, 995 F.3d 367 (5th Cir. 2021)...............................................17

*United States v. Robinson*, 354 F'Appx 518 (2d Cir. 2009).......................................10

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002)...........................................15

*United States v. Tenzer,* 213 F.3d 34 (2d Cir. 2000)...................................................15

ii

*United States v. Valente*, 915 F.3d 916 (2d Cir. 2019)...................................................8

*United States v. Wills*, 476 F.3d 103 (2d Cir. 2007)...................................................16

## Other Authorities

18 U.S.C. § 3553(a)(6).......................................................................................16, 17

U.S.S.G. § 2E1.1...........................................................................1, 2, 3, 7, 9, 10

U.S.S.G. § 4A1.2..............................................................1, 2, 4, 5, 7, 8, 11, 12, 13

U.S.S.G. § 5G1.3...................................................................................13, 14, 15

U.S.S.G. § 5G2.23......................................................................................14

## ARGUMENT

**Point I:    The Lower Court Erred by Using Relevant Conduct to Increase The Appellant's Criminal History Category at Resentencing**

In Appellant's principal brief, we argued that the lower court erred by relying upon relevant conduct to increase Mr. Smith's criminal history category, in contravention of U.S.S.G. § 4A1.2.  In particular, we argued that in the wake of the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), the lower court should not have relied upon U.S.S.G. § 2E1.1's Application Note 4 to override the plain dictates of § 4A1.2.

In its opposition brief, the Government has offered three arguments in rebuttal.  First, it claims that the Appellant was not prejudiced by the lower court's decision to utilize relevant conduct in calculating his criminal history.  In particular, the Government contends that the court's use of such conduct merely increased the Appellant's criminal history from Category I to Category II.  Because the Appellant's Offense Level was 41, the Government claims that this change had no effect on Appellant's advisory Guidelines range.[1]

---

[1]    At an Offense Level of 41, the advisory Guidelines range for a defendant in Criminal History Category III is 360 months to life.  The same advisory Guidelines range applies to a defendant in Criminal History Category II.

1

Similarly, the Government argues that the Appellant was not prejudiced because his offense level would have been the same, regardless of whether the court considered such relevant conduct.

And finally, the Government claims that in any event, there was no legal error, because U.S.S.G. § 2E1.1's Application Note 4 overrides the general rule set forth in U.S.S.G. § 4A1.2. As set forth below, the Government's arguments are demonstrably wrong, and its cited authority inapposite.

First, the Appellant was *unquestionably* prejudiced. The lower court's reliance upon relevant conduct increased his criminal history from Category I to <u>Category III</u> (*not* Category II). As a result, at an Offense Level of 41, his advisory Guidelines range with respect to Counts One and Three should have been 324 to 405 months' incarceration – *not* 360 months' to life. This is true regardless of whether his offense level was properly calculated.

Second, all of the authority which the Government cites to support the continued viability of Application Note 4 either predates or fails to address *Kisor v. Wilkie*. Notably, the Government has not even *attempted* to explain how its position can be reconciled with the specific guidance of *Kisor*. As set forth below, the reason for this silence is clear – under the *Kisor* framework, the unambiguous language of § 4A1.2 must control.

2

**A.** **As the Appellant Argued in His Principal Brief, The Lower Court's Adherence to Application Note 4 Prejudiced the Defendant, By Increasing His Criminal History from Category I to Category III**

The order of the Respondent's argument is revealing. The Government does not start by advocating for the continued viability of Application Note 4. Rather, at the outset, it seeks to avoid the legal issue altogether, arguing that, regardless of any error, there has been no prejudice to the Appellant.

In particular, the Government argues that the lower court's consideration of the Defendant's 2007 narcotics conviction merely resulted in the assessment of three criminal history points U.S.S.G. § 4A1.1(a). It argues that even without these three points, Smith would have still been in Criminal History Category II, where he was also assessed two "status points" under § 4A1.1(d), because the offense of conviction occurred while Smith was serving a sentence of probation arising from that same, 2007 conviction.

As a result, the Government claims that Smith's Guidelines recommendation would have remained unchanged, and that any error was immaterial. It further suggests that Appellant has waived his right to argue that these two status points under § 4A1.1(d) were wrongly assessed.

These arguments are completely and utterly without merit. The applicability of the status point enhancement under § 4A1.1(d) – like any enhancement under § 4A1.1 – hinges on whether Smith's 2007 conviction fits the definition of a "prior

3

sentence" under § 4A1.2(1).  This is not a controversial or confusing point – the Sentencing Guidelines are clear and explicit in this regard.  *See* U.S.S.G. § 4A1.1 Application Note 4 ("For the purposes of this subsection, a 'criminal justice sentence' means a sentence countable under § 4A1.2.").  Because the definition of "prior sentence" under § 4A1.2 excludes conduct that was part of the instant offense, Smith's 2007 conviction could not be used as the basis for *any* points enhancement under § 4A1.1 – including under subsection (d).  And the Government surely knows this.

Moreover, the Appellant's principal brief was equally clear and explicit in making this point.  We expressly argued § 4A1.2 defines which previous adjudications should be counted as "prior sentences" for purposes of calculating a defendant's criminal history points.  Appellant's Brief at p. 13.  And we clearly explained how the lower court's decision to disregard the directives of § 4A1.2 resulted in the assignment of three criminal history points under § 4A1.1(a), and "*two more criminal history points under U.S.S.G. § 4A1.1(d)*."  *Id*. at p. 8 (emphasis added).  "As a result," we explained, "the Appellant's criminal history was increased from Category I to Category III."  *Id*.; *see also* Appellant's Brief at p. 19 ("the lower court's adherence to Application Note 4 significantly increased the Appellant's Criminal History, which surged from Criminal History Category I to Criminal History Category III.").

In short, the Guidelines are unequivocal – no criminal history points can be assessed under *any* subsection of § 4A1.1 where the adjudication in question was not a "prior sentence" as defined by § 4A1.2. The Government's suggestion to the contrary – and its concomitant claim that this issue is somehow unpreserved – both border on the frivolous.

Finally, even if the Government were somehow correct (and it is not), the assessment of three criminal history points under § 4A1.1(a) would *still* not be harmless error. Separate and apart from the issues raised here, Mr. Smith is currently eligible to pursue a sentencing reduction under 18 U.S.C. § 3582(c), because of recent changes to the Sentencing Guidelines.[2] In particular, the Sentencing Commission has now completely eliminated § 4A1.1(d)'s "status point" enhancement for defendants – like Mr. Smith – who have less than seven total criminal history points. *See* U.S.S.G. Amendment 821. Moreover, the change is retroactive, meaning Mr. Smith is currently entitled to seek resentencing. If this Court were to simply *ignore* the improper assessment of three points under § 4A1.1(a) – as urged by the Government – Mr. Smith would be prejudiced at the resentencing phase, because he would remain stuck in Criminal History Category II, when in fact, he *should be* in Category I.

---

[2]     These changes went into effect after Appellant filed his principal brief.

Remarkably, the Government expressly acknowledges as much, revealing an intentional, two-step strategy, designed to deny Appellant relief to which he is entitled. In step one, the Government argues – to this Court – that the assessment of three criminal history points under § 4A1.1(a) is harmless error, because (it claims) the two points under § 4A1.1(d) were properly assessed, placing the Appellant in Criminal History Category II. In step two – at resentencing – the Government will then pivot to concede that these two points under § 4A1.1(d) no longer apply, while *again* arguing harmless error – but this time based on the three criminal history assessed points under § 4A1.1(a). *See* Govt. Brief at footnote 6. This piecemeal, divide-and-conquer strategy is intellectually disingenuous, and if successful, would constitute an abuse of the harmless error standard.

**B.      The Appellant Was Prejudiced by the Increase In His Criminal History Category, Regardless of Whether His Offense Level Was Properly Calculated**

The Government contends that "underpinning Smith's argument is a presumption that the conviction counted for criminal history points and also contributed to the offense level computation." Govt. Brief at p. 14. The Government then goes on to argue that Smith's offense level would have remained unchanged even if the court had excluded from its calculation the 10.579 grams of base cocaine seized in connection with the 2007 state-court arrest. As a result, the Government argues that Smith was not prejudiced.

The Government misapprehends Appellant's argument. We have not argued that Appellant's offense level was improperly inflated.

In our principal brief, we *did* point out that both the indictment and the PSR repeatedly describe the criminal conduct underlying Appellant's 2007 arrest as part of the instant offense. As a result, we noted that the court included those 10.579 grams in calculating Appellant's offense level. But in making those observations, we did not argue that Appellant's offense level was thereby inflated. Rather, Appellant's purpose was merely to establish that the conduct underlying his 2007 arrest was indisputably "part of the instant offense" under U.S.S.G. §4A1.2. As a result, it should not have been used to calculate his criminal history. *See* Appellant's Brief at p. 18-19.

Notably, the Government does not contest this essential point. Although it claims that the inclusion of these 10.579 grams did not ultimately increase the Appellant's offense level, it concedes that the conduct underlying his 2007 arrest *was* part of the charged offense. *Contrast United States v. Hopper*, Nos. 19-3087-cr (L) 2022 U.S. App. LEXIS 12945, at *5-6 (2d Cir. May 13, 2022) (declining to reach the continuing viability of U.S.S.G. § 2E1.1 Application Note 4, based upon a factual determination that defendant's prior state-court conviction for misdemeanor drug possession was *not* actually part of the charged RICO offense, and therefore properly included within his criminal history.).

7

Given these facts, the prejudice to the Appellant in no way hinges upon the calculation of his offense level. If the lower court had deferred to U.S.S.G. § 4A1.2, Appellant would have been in Criminal History Category I. At an Offense Level of 41, his advisory Guidelines range would have been 324 to 405 months. Notably, this is the very calculation adopted by the court at its original sentencing, where it imposed a sentence of 240 months with respect to Counts One and Three.

But instead, at resentencing, the lower court followed the guidance of Application Note 4, increasing the Appellant's Criminal History from Category I to Category III. This change yielded a significantly higher Guidelines range (360-life), and a corresponding increase in the sentences actually imposed on Counts One and Three (from 240 to 348 months' incarceration). In short, Appellant was clearly prejudiced by the lower court's improper reliance on Application Note 4. *See United States v. Valente*, 915 F.3d 916, 923-24 (2d Cir. 2019) (defendant prejudiced by error which increased his criminal history category).

**C.** **The Government Fails to Acknowledge the Impact of *Kisor v. Wilkie***

The main thrust of the Appellant's argument is as follows: in the wake of *Kisor v. Wilkie*, a district court must commence its analysis by asking whether the otherwise controlling Guidelines provision is "genuinely ambiguous." If not, there is simply no occasion to defer to Guidelines' commentary urging a contrary result.

8

It is therefore surprising that the Government's response does not contain *any* substantive discussion of *Kisor*, its holding, or its application to the facts of this case. Instead of addressing *Kisor* head on, the Government adopts an ostrich approach, citing a series of cases which either pre-date *Kisor*, or where the impact of its holding was neither raised by the parties nor addressed by the Court.

Hence, the Government cites to this Court's summary order in *United States v. Hampton*, No. 20-2986, 2021 U.S. App. LEXIS 36992 (2d Cir. Dec. 15, 2021), which involved the resentencing of Russell Hampton – one of Mr. Smiths' co-defendants. But Hampton did not raise the argument that is presently before the Court. Indeed, *Kisor v. Wilkie* was not mentioned even *once* by Hampton, in either his principal brief or his reply brief. *See* Electronic Docket for *United States v. Hampton*, 20-2986, Defendant's Principal Brief at ECF 44; Reply Brief at ECF 87. Instead, Hampton merely argued that the lower court's adherence to Application Note 4 at his resentencing was "a problem." As this Court observed, Hampton did "not point to any case, Guidelines provision, or other authority to support his argument." *Hampton*, 2021 U.S. App. LEXIS 36992, at *7. As such, this Court's summary order in *Hampton* did not even consider, much less decide, the impact of *Kisor's* holding on the continued viability of U.S.S.G. § 2E1.1 Application Note 4. *See Brown v. City of N.Y.*, 862 F.3d 182, 186 (2d Cir. 2017) (issue not decided where it was neither argued on appeal nor addressed in the Court's decision).

9

The remaining cases cited by Respondent – *United States v. Minicone*, 960 F.2d 1099, 1111 (2d Cir. 1992), *United States v. Marrone*, 48 F.3d 735 (3d Cir. 1995), *United States v. Robinson*, 354 F'Appx 518, 521 (2d Cir. 2009), and *United States v. Mizell*, 671 F. App'x 826 (2d Cir. 2016) – are likewise inapposite, in that they all predate the Supreme Court's holding in *Kisor*.

Indeed, the first of those cases – *Minicone* – predates even *Stinson v. United States*, 508 U.S. 36 (1993), and as a result, contains no discussion or analysis of *Auer* deference. Rather, the legal issue in *Minicone* was whether Application Note 4 applies narrowly to the prior offense for which "the defendant has previously been sentenced," or more broadly to the conduct underlying such offense.[3] In short, it has nothing to do with the issue before this Court.

Similarly, neither *Robinson* nor *Mizel* deal with the issue of *Auer* deference. To the contrary, *Robinson* dealt with interplay between Application Note 4 and the Career Offender Guidelines, while *Mizel* involved a prosecutor's breach of the plea agreement.

In fact, the *only* cited case which is *actually* on point, is *United States v. Marrone*, 48 F.3d 735 (3d Cir. 1995). The defendants in *Marrone* argued that their

---

[3]    In *Minicone*, the defendant had previously been convicted and sentenced for *soliciting* murder, but not substantive murder. The Government argued (unsuccessfully) that the substantive murder (as opposed to the solicitation) should be used to calculate defendant's offense level.

criminal histories should not be enhanced based upon the commentary to § 2E1.1. The Third Circuit, citing *Stinson*, held that it was bound to follow such commentary "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 738.  The court went to conclude that Application Note 4 of § 2E1.1 – while not an obvious interpretation – is not "plainly" inconsistent with § 4A1.2:

> Admittedly, the Sentencing Commission could have amended the guidelines to achieve the same result. It was, however, equally free to amend the commentary if the guideline which the commentary interprets will bear the construction.
>
> Application Note 4 constitutes an interpretation of the RICO guideline that may not be compelled by the guideline text but is nonetheless not plainly erroneous or inconsistent with section 4A1.2(a)(1).  We are therefore bound to accept Application Note 4 as written.
>
> *United States v. Marrone*, 48 F.3d 735, 739 (3d Cir. 1995) (internal citations

omitted).

The problem – from the Government's standpoint – is that this analysis cannot be reconciled with the Supreme Court's most recent explanation of *Auer* deference. In the wake of *Kisor*, it is no longer sufficient to conclude that an agency interpretation *can be* reconciled with the text of the regulation, or that such interpretation is not "plainly" incorrect.  And it is wrong to suggest that the Sentencing Commission can "amend" the plain meaning of the Guidelines by simply tinkering with the commentary.

11

Rather, the initial step in any such analysis *must be* a determination as to whether the regulation (or guideline) in question is *genuinely* ambiguous in the first place. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) ("when we use that term, we mean it – genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation."). If it is not, that is the end of the matter, and there is simply no reason to refer to agency interpretation – in this case, the Guidelines Commentary. *Id*. at 2415 ("if the law gives an answer – if there is only one reasonable construction of a regulation – then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense.").

The Third Circuit in *Marrone* did *not* commence its analysis by addressing this necessary, threshold question: whether the definition of "a prior sentence" under U.S.S.G. § 4A1.2(a)(1) is "genuinely ambiguous."

Similarly, in its brief, the Government also avoids this, the central issue on appeal. Nowhere do prosecutors analyze the language of U.S.S.G. § 4A1.2(a)(1), or even assert that such definition is, in any sense, ambiguous.

The reason for the Government's reticence is obvious: the language of § 4A1.2(a)(1) – far from being "genuinely ambiguous" – is plain and clear on its face. Under *Kisor*, that is the end of analysis; there is simply no occasion to turn to commentary which would have sentencing courts deviate from the unambiguous dictates of § 4A1.2.

Accordingly, because the Government has not even asserted – much less demonstrated – genuine ambiguity, there is no room in this case for *Auer* deference. The simple and straightforward language of § 4A1.2 dictates that Mr. Smith's 2007 state court conviction should not have been used to calculate his criminal history points.

**Point II.**     **The Lower Court Erred in Declining to Downwardly Depart To Account for Time Served Under U.S.S.G. § 5G1.3**

The Government does not deny that Appellant's 2008 firearms conviction was relevant conduct to the federal offense. Nor does it deny that, at his original sentencing, the Appellant was entitled to receive credit for this undischarged state court sentence under U.S.S.G. § 5G1.3. That section *requires* a sentencing court to reduce a defendant's sentence "for any period of imprisonment already served on [an] undischarged term of imprisonment" arising from relevant conduct, where such time will not be credited by the Bureau of Prisons.[4] It further obligates a district court to specify that its sentence is to be served concurrent to any remainder of the undischarged state sentence. Neither of those things happened here.

Accordingly, the Government tacitly acknowledges that Mr. Smith is serving a sentence that is years longer than it should have been under the law.

---

[4]     The BOP will not credit the time spent in state custody where such time "has been credited against another sentence" – *i.e.*, a state court sentence. *See* 18 U.S.C. § 3585(b).

However, because the parties were apparently oblivious to the error, and did not timely alert the court at the original sentencing or during the original appeal, the Government takes the position that any opportunity to address this error has been permanently foreclosed. Although the district court could have corrected this injustice at Appellant's re-sentencing, the Government is quick to point out that relief under U.S.S.G. § 5G2.23 – unlike U.S.S.G. § 5G1.3 – is discretionary. It claims that despite the unequivocal error at the *original* sentencing, this Court is now powerless to address such error, because the district court's refusal to grant a discretionary, downward departure at resentencing under § 5G2.23 is "not appealable." Govt. Brief at p. 21.

The Government is wrong. First, this Court has said that in the case of a district court's refusal to grant a downward departure, it will "review the decision only if the sentencing judge imposed a sentence in violation of law or incorrectly applied the Sentencing Guidelines." *United States v. Bala*, 236 F.3d 87, 91 (2d Cir. 2000). As noted above, the Appellant's sentence here is unlawful and results from the incorrect application of U.S.S.G. § 5G1.3.

Alternatively, even if the Government is correct, and the district court's refusal to downwardly depart at resentencing *is* unreviewable, this Court may *still* exercise its discretion to reach the error at the *original* sentencing, even though the issue was not raised in Appellant's original appeal.

14

While the "law of the case" doctrine would ordinarily prevent this Court from revisiting an issue relating to the Appellant's original sentence, "appellate courts may depart from the law of the case and reconsider [such an] issue for cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002), *citing United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000), *United States v. Minicone,* 994 F.2d 86, 89 (2d Cir. 1993); *and United States v. Lanese,* 937 F.2d 54, 57 (2d Cir. 1991).

The error here is clear and the injustice manifest. Indeed, the Government does not deny that Appellant was entitled to a sentencing reduction under § 5G1.3 at his original sentencing. If this error goes uncorrected, the Appellant will spend close to an *extra five years* in prison. Accordingly, this Court should exercise its discretion, in the interests of justice, in order to right this unfortunate and deeply unfair oversight.

**Point III.   Unwarranted Disparity**

Finally, the Government argues that Appellant's claim of unwarranted sentencing disparity is a "non-starter," because this Court is prohibited from considering sentencing disparities between similarly situated co-defendants in the same case. Rather, it contends, this Court may *only* consider disparity "among defendants nationwide." Govt. Brief at 23.

15

The Government overstates the rule articulated by this Court. While this Court has recognized that the legislative history of the Sentencing Reform Act of 1984 focused primarily upon sentencing disparities between different judges and geographic regions, the plain text of 18 U.S.C. § 3553(a)(6) in no way limits courts to considering *only* such disparity. *See United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007) ("This Court has noted that the Sentencing Reform Act of 1984 . . . was intended to eliminate <u>national</u> disparity. We have also observed, however, that the plain language of § 3553(a)(6) does not on its face restrict the kinds of disparity a court may consider.") *citing United States v. Fernandez*, 443 F.3d 19, 31 n.9 (2d Cir. 2006).

Rather, § 3553(a)(6) broadly instructs courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This language is plain on its face – it instructs that defendants with similar criminal histories, who engage in similar criminal conduct, should receive similar sentences. Seeking to artificially cabin its application by reference to the perceived "legislative intent" of the act would contravene well-established norms of statutory construction. *See Ratzlaf v. United States*, 510 U.S. 135, 147-48, 114 S. Ct. 655, 662 (1994) ("we do not resort to legislative history to cloud a statutory text that is clear.").

16

Moreover, the limiting gloss which the Government seeks to place on § 3553(a)(6) would make it all but unenforceable in practice. Every crime is, to some degree, unique. As a result, it will always be possible to distinguish one particular crime from a generic category of offenses committed nationwide. As one Appellate Court has observed:

> national averages of sentences with no details underlying the sentences are unreliable to determine unwarranted disparity. Indeed, where averages only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted.

*United States v. Naidoo*, 995 F.3d 367, 383 (5th Cir. 2021) (internal citations omitted).

By comparison, the question of whether defendants in *the same case* received disparate sentences is much simpler. Here, Dearick Smith and Michael Jackson committed *the same crime*. The Government itself adjudged both their criminal history and post-conviction rehabilitation to be similar. A-291 to A-292. And yet, Smith received a sentence that was 28 months longer.

This disparity arose – not through a comparison of the Defendants' relative culpability, but because the district court erred in treating Smith's sentence as the starting point for Jackson – notwithstanding the court's contention that it had reduced Smith's sentence to account for the time which he served on his state-court

17

offenses.  The lower court then *further* reduced Jackson's sentence based on various factors, including a yet-to-be imposed state court sentence.  A-321 to A-322.

In short, under the unusual facts of this case, the court's flawed sentencing methodology gave rise to demonstrable and unwarranted disparity in sentences.

## CONCLUSION

For the reasons set forth above, this Court should vacate the Appellant's sentence, and should remand the case for resentencing in accordance with the Court's decision.

Dated:     Garden City, New York
           December 22, 2023


                                   Respectfully submitted,
                          By:      /s/ Matthew W. Brissenden
                                   Matthew W. Brissenden, P.C.
                                   *Counsel for Dearick Smith*
                                   666 Old Country Road, Suite 501
                                   Garden City, NY 11530
                                   516-683-8500

18

## **CERTIFICATE OF COMPLIANCE**

As counsel of record to Defendant-Appellant, I hereby certify that this brief complies with the type - volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. I am relying upon the word count of the word-processing system (Microsoft Word) used to prepare the brief, which indicates that 4,049 words appear in the brief.

By: /s/ Matthew W. Brissenden
Matthew W. Brissenden, P.C.
*Counsel for Dearick Smith*
666 Old Country Road, Suite 501
Garden City, NY 11530
516-683-8500